| | |
|---|---|
| 1 | Andrea F. Oxman (SBN 252646) |
| 2 | andrea.oxman@jacksonlewis.com<br>**JACKSON LEWIS P.C.** |
| 3 | 725 South Figueroa Street, Suite 2500<br>Los Angeles, California 90017-5408 |
| 4 | Telephone: (213) 689-0404<br>Facsimile: (213) 689-0430 |
| 5 | Alice E. Carranza Vega (SBN 328474) |
| 6 | Alice.CarranzaVega@Jacksonlewis.com<br>**JACKSON LEWIS P.C.** |
| 7 | 200 Spectrum Center Drive, Suite 500<br>Irvine, California 92618 |
| 8 | Telephone: (949) 885-1360<br>Facsimile: (949) 885-1380 |

Attorneys for Defendant
AMTRUST FINANCIAL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTI MOLNAR. | Case No.: 2:22-cv-315 |
| Plaintiff, | |
| vs. | |
| AMTRUST FINANCIAL SERVICES, INC, and DOES 1 THROUGH 25, inclusive, | **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441(a), (b), AND 1446 (DIVERSITY)** |
| Defendants. | [Filed concurrently with Civil Cover Sheet; Declaration of Andrea F. Oxman; Declaration of Amy Hall; Notice of Interested Parties; and Corporate Disclosure Statement] |
| | Complaint filed: October 21, 2021 |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant AMTRUST FINANCIAL SERVICES, INC. ("Defendant") hereby invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332,

1441(a) and (b), and 1446, and removes the above-entitled action to this Court from the Superior Court of the State of California for the County of Orange.

1. On October 21, 2021, Plaintiff KRISTI MOLNAR ("Plaintiff") filed a civil Complaint against Defendant in the Superior Court of the State of California for the County of Orange, captioned *Kristi Molnar v. AmTrust Financial Services, Inc.*, Case No. 30-2021-01227449-CU-WT-NJC (hereinafter, the "Action"). In the Action, Plaintiff asserts the following claims against Defendant: (1) Failure to Pay Wages Due; (2) Failure to Pay Minimum Wages; (3) Failure to Indemnify Necessary Business Losses; (4) Failure to Furnish Accurate Wage and Hour Statements; (5) Violation of Overtime Laws; (6) Violation of Meal Period Laws; (7) Violation of Rest Period Laws; (8) Waiting Time Penalties; (9) Violation of California Business and Professions Code § 17200; (10) Wrongful Termination and Discrimination in Violation of Government Code § 12940; (11) Disability Discrimination in violation of the Fair Employment and Housing Act ("FEHA") -- Failure to Provide Reasonable Accommodations in Violation of Government Code § 12940(m); (12) Disability Discrimination in violation of FEHA -- Failure to Engage in Interactive Process in Violation of Government Code § 12940(n); (13) Retaliation in Violation of FEHA (Government Code § 12940); (14) Wrongful Termination and Discrimination in Violation of Labor Code § 132(a); and (15) Wrongful Termination in Violation of Public Policy. A true and complete copy of Plaintiff's October 21, 2021 Complaint filed in the Action is attached as **Exhibit A** to the Declaration of Andrea F. Oxman ("Oxman Decl.") filed concurrently with this Notice of Removal.[1] (Oxman Decl., ¶ 2.)

2. Plaintiff served the Summons and Complaint and related court documents on Defendant on December 17, 2021 via personal service. (Declaration of Amy Hall ("Hall Decl."), ¶ 5.) A true and complete copy of the Summons, Complaint and other related

---

[1] All references to Exhibits made in this Notice of Removal shall refer to Exhibits to the Declaration of Andrea F. Oxman filed concurrently herewith.

court documents received by Defendant to date collectively are attached as **Exhibits A and B**. (Oxman Decl., ¶¶ 2-3.)

3. On January 13, 2022, Defendant filed an Answer to the Complaint. A true and correct copy of Defendant's Answer is attached as **Exhibit C** to the Declaration of Andrea F. Oxman. (Oxman Decl., ¶ 4.)

4. Exhibits A through C constitute all the documents served on and obtained by Defendant to date. (Oxman Decl., ¶ 5.)

## STATEMENT OF JURISDICTION

5. The District Court has diversity jurisdiction under 28 U.S.C. § 1332(a) where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. As set forth below, both requirements are satisfied here. Therefore, this Court has subject matter jurisdiction over this case.

6. As set forth below, jurisdiction within the District Court is proper on the grounds herein described and the Action is timely and properly removed upon the filing of this Notice.

## TIMELINESS OF REMOVAL

7. This Notice of Removal has been filed within thirty (30) days after Defendant was served a copy of Plaintiff's Summons and Complaint upon which this action is based. This Notice of Removal therefore is filed within the time period provided by 28 U.S.C. § 1446(b).

8. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Orange County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will have been satisfied.

## VENUE IS PROPER

9. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441(a) which expressly provides that the proper

venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending."

10. Venue of this action lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1441, *et seq*. and 1391(a) because this is the judicial district of this Court in which the Action arose and where Plaintiff resides.

## DIVERSITY JURISDICTION

11. As stated above, the Court properly exercises diversity jurisdiction where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and cost. 28 U.S.C. § 1332(a).

12. Diversity jurisdiction exists where there is diversity of citizenship between the parties at the time the lawsuit is filed. *See Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004).

13. Citizenship of the parties in this matter is determined by their citizenship status at the time of the lawsuit's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

14. Plaintiff states in her Complaint that she is a resident of Orange County, California. (*See* **Exhibit A**, Complaint at ¶ 1.) She is thus a citizen of California for purposes of this Action and removal.

15. A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

16. Defendant, both at the time this action was commenced and the time it was removed to federal court, is a citizen of Delaware within the meaning of Section 1332(c)(1), because it was at all times a corporation formed under the laws of the State of Delaware and its principal place of business and corporate headquarters are located in New York, New York, where Defendant conducts a predominance of its corporate and business activities. *The Hertz Corporation v. Friend* (2010) 130 S.Ct. 1181, 1192. (Hall Decl., ¶¶ 3-4.)

17. Applying the "nerve center" test, New York is the state where Defendant's

1  primary executive, administrative, financial, and management functions are conducted, and
2  where its high-level officers direct, control, and coordinate their activities – *i.e.*, the
3  principal place of business of Defendant. (Hall Decl., ¶ 4.)

4  18. The presence of Doe defendants has no bearing on the diversity with respect
5  to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the
6  citizenship of defendants used under a fictitious name shall be disregarded.")

### AMOUNT IN CONTROVERSY

19. This action also meets the amount in controversy requirement. Section 1332(a) of the United States Code authorizes the removal of cases in which, among other factors above, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Without admitting that Plaintiff could recover any damages or penalties, Defendant asserts that the amount in controversy in this action could exceed $75,000, exclusive of interest and costs.

20. In determining whether the amount in controversy exceeds $75,000, the Court must presume the plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002), *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002), *citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

21. The amount in controversy may include general and special compensatory damages and attorneys' fees that are recoverable by statute, such as the FEHA and California Labor Code claims at issue in this case. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir.

1982), cert. denied, 459 U.S. 945 (1982) (attorney's fees may be taken into account to determine jurisdictional amount). The Court may examine the nature of the action and the relief sought and take judicial notice of attorneys' fee awards in similar cases. *See e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (attorneys' fees in individual employment discrimination cases often exceed damages). Indeed, cases in the Ninth Circuit firmly establish that statutory attorneys' fees will be included as a basis for determining the jurisdictional amount in controversy. See *Galt G/S,* 142 F.3d at 1155-56. Furthermore, such fees are calculable beyond the time of removal. *Simmons*, 209 F.Supp.2d at 1035.

22. In this case, Plaintiff seeks to recover attorneys' fees pursuant to the California Labor Code, Government Code section 12965(b), and California Code of Civil Procedure section 1021.5. (*See* **Exhibit A**, Complaint at 21:24-26.) At a conservative rate of $250 per hour, Plaintiff would reach the jurisdictional threshold of $75,000 after her counsel in this action expended 300 hours. *Tiffany v. O'Reilly Auto. Stores, Inc.*, No. CIVS-13-0926 LKK/KJN, 2013 U.S. Dist. LEXIS 130082, *9-10 (E.D. Cal. Sept. 10, 2013) (estimating future attorney's fees using rate of $250 per hour). Plaintiff's attorneys' fees alone in this matter will exceed $75,000 if the case proceeds to trial.

23. Here, without admitting that Plaintiff could recover any damages or penalties, Defendant, in fact, can state that it is more probable than not that the amount in controversy in the Action exceeds $75,000, exclusive of interest, and costs.[2] More specifically, even when considering only Plaintiff's claims for: alleged Violation of Rest Period Laws; alleged Violation of Meal Period Laws; alleged Waiting Time Penalties; and alleged Wrongful Termination in Violation of Public Policy, Defendant easily establishes that the

---

[2] Defendant denies the validity and merit of all of Plaintiff's claims, including the amount of alleged damages and penalties claimed and the legal theories upon which they purportedly are based, and any other relief that may flow from them, but properly uses Plaintiff's alleged theories of recovery to demonstrate that it is more probable than not that the amount in controversy exceeds $75,000. *Chavez v. JP Morgan Chase Co.,* 888 F.3d 413, 418 (9th Cir, 2018) (the amount in controversy includes all relief claimed at the time of removal that Plaintiff would be entitled to if she prevails).

amount in controversy exceeds $75,000, exclusive of interest and costs.[3] Plaintiff alleges that she began working for Defendant in or about December 14, 2015 and was terminated in or around April 5, 2021. (**Exhibit A,** Complaint at ¶¶ 14, 22.) Plaintiff further alleges that her salary at the time of her termination was $96,000.00. (**Exhibit A,** Complaint at ¶ 17.) Based on a standard forty-hour workweek, Plaintiff's hourly rate equates to approximately $46.15.[4]

**a. Amount in Controversy as to Plaintiff's Claim for Violation of Rest Period Laws:** Plaintiff seeks rest break premium pay equal to one (1) hour of wages pursuant to Labor Code section 226.7 and the applicable Wage Orders for each day of work during the applicable claim period on which Defendant allegedly failed to provide her with required rest periods. (*See* **Exhibit A**, Complaint at ¶¶ 62-69.) Plaintiff alleges Defendant "failed to pay Plaintiff the full rest period premium due pursuant to California Labor Code §226.7." (**Exhibit A**, Complaint at ¶ 68.) Plaintiff further alleges she was required "to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked." (**Exhibit A**, Complaint at ¶ 66.) Plaintiff's Complaint provides no indication as to the number of rest periods Plaintiff claims she was not provided per week. Using a conservative estimate of one alleged violation per workweek, for purposes of this removal only, if Plaintiff were to prevail on this claim, she could seek to recover $6,737.90 in premium pay, calculated as follows: one (1) violation

---

[3] For purposes of brevity, Defendant has not detailed the amount in controversy as to every claim Plaintiff has asserted in the Action. Should Plaintiff challenge the amount in controversy and contend jurisdiction in this Court is not proper, Defendant reserves the right to supplement its calculations and can and will submit further evidence and calculations to establish the amount in controversy requirement has been met.

[4] Defendant denies the validity and merit to Plaintiff's claim that she was improperly classified as an exempt employee. However, for the purposes of calculating potential damages herein, Defendant's calculations are based on the approximate hourly rate of $46.15, calculated as follows: $96,000 / 52 weeks per year = $1,846.15 per week → $1,846.15 / 40 hours per week = $46.15 per hour.

per week × $46.15/hour × 146 workweeks from October 21, 2017 to August 8, 2020.[5] In other words, there is at least **$6,737.90** in controversy as to this claim.

      **b.**    **Amount in Controversy as to Plaintiff's Claim for Violation of Meal Period Laws:** Plaintiff seeks meal period premiums equal to one (1) hour of wages pursuant to Labor Code §§ 226.7 and 512 for each day of work during the applicable claim period on which Defendant allegedly failed to provide her with required meal periods. (*See* **Exhibit A**, Complaint at ¶¶ 62-70.) Plaintiff alleges she "was regularly required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes. Plaintiff was [also allegedly] not authorized or permitted lawful meal periods and was not provided with one hour's wages in lieu thereof in violation of, among others, Labor Code §§ 226.7, 512 and applicable IWC Wage Orders." (**Exhibit A**, Complaint at ¶ 57.) Plaintiff further alleges that Defendants "failed to pay Plaintiff the full meal period premium due pursuant to California Labor § 226.7." (**Exhibit A**, Complaint at ¶ 59.) Plaintiff's Complaint provides no indication as to the number of meal periods Plaintiff claims she was not provided per week. As the calculation of premiums for alleged meal period violations is the same as the calculation for alleged rest period violations, and using a conservative estimate of one alleged violation per workweek, for purposes of this removal only, if Plaintiff were to prevail on this claim, she could seek to recover $6,737.90 in premium pay, calculated as follows: one (1) violation per week × $46.15/hour × 146 workweeks from October 21, 2017 to August 8, 2020.[6] In other words, there is at least **$6,737.90** in controversy as to this claim.

      **c.**    **Amount in Controversy as to Plaintiff's Claim for Waiting Time Penalties:** Plaintiff seeks to recover penalties pursuant to California Labor Code section 203 for Defendant's purported failure to pay all unpaid wages at termination. (*See* **Exhibit A**, Complaint at ¶¶ 71-74.) Although the Complaint does not specify the amount of days,

---

[5] Plaintiff alleges that on or about August 8, 2020, she began a medical leave of absence and had not returned to her employment as of the date of her termination on April 5, 2021. (*See* **Exhibit A**, Complaint at ¶ 20.)

[6] *Id.*

nor the dollar amount, of penalties being sought, if Plaintiff prevailed on this claim and sought to recover the maximum 30 days' of penalties authorized by the statute, the penalties would total **$11,076.00** ($46.15/hour x 8 hours/day x 30 days).

    **d.** **Amount in Controversy as to Plaintiff's Claim for Wrongful Termination:** Plaintiff further seeks an unspecified amount of compensatory and punitive damages for her alleged wrongful termination of employment by Defendant. (*See* **Exhibit A**, Complaint at ¶¶ 134-135.) Plaintiff alleges "her physical disability, medical condition, [and] the problems she was having…[were] a substantial motivating reason in DEFENDANT'S decision to terminate" her. (**Exhibit A**, Complaint at ¶ 96.) Although Plaintiff has not specified the amount of compensatory damages she seeks, this claim necessarily increases the amount in controversy, even without taking into consideration any alleged emotional distress damages Plaintiff may seek. If Plaintiff were to prevail on her claim for wrongful termination, she could seek to recover one (1) year of back pay and at least six (6) months of front pay at her annual salary of $96,000.00 ($96,000.00 + $48,000.00). In other words, there is at least **$144,000.00** in controversy as to this claim.

  24. Presuming, as it must for purposes of determining jurisdiction, that Plaintiff will prevail on her claims for Violation of Rest Period Laws, Violation of Meal Period Laws, Waiting Time Penalties, and Wrongful Termination, the data set forth in Paragraphs 24(a) – (d), above, clearly establishes it is more probable than not that the amount in controversy exceeds $75,000. The following table summarizes Plaintiff's potential recovery in this action if she were to prevail on these specific claims:

| Claim | Damages / Penalties |
|---|---|
| Alleged Failure to Provide Rest Periods | $6,737.90 |
| Alleged Failure to Provide Meal Periods | $6,737.90 |
| Alleged Waiting Time Penalties (Labor Code § 203) | $11,076.00 |
| Potential Back Pay and Front Pay Damages Arising from Plaintiff's Alleged Wrongful Termination Claim | $144,000.00 |

| Claim | Damages / Penalties |
|---|---|
| Attorneys' fees (assuming 200 hours at $250 per hour) | $50,000 |
| **Total:** | **$218,551.80** |

25. In sum, Plaintiff's potential recovery for compensatory damages and penalties in connection with her Labor Code claims and her wrongful termination claim, as well as Plaintiff's prayer for attorneys' fees (*see* **Exhibit A**, Complaint at Prayer, 21:7-22-1), satisfy the jurisdictional prerequisite for establishing the amount in controversy. It cannot be said to a legal certainty that Plaintiff would not be entitled to recover the jurisdictional amount if Plaintiff prevails at trial. Accordingly, the amount in controversy in this case exceeds the requirement under 28 U.S.C. §1332(a).

WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Orange to this Court.

DATED: January 14, 2022            JACKSON LEWIS P.C.

By:   /s/ *Alice E. Carranza Vega*
      ANDREA F. OXMAN
      ALICE E. CARRANZA VEGA

      Attorneys for Defendant
      AMTRUST FINANCIAL SERVICES, INC.

4861-4374-4777, v. 1